UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SASHA WILFRED, derivatively on behalf of ITT EDUCATIONAL SERVICES, INC.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>KEVIN M. MODANY, JOHN F. COZZI, THOMAS I. MORGAN, JOHN E. DEAN, JAMES D. FOWLER, JR., JOANNA T. LAU, VIN WEBER, SAMUEL L. ODLE, JOHN A. YENA, DANIEL M. FITZPATRICK,<br><br>　　　　　　　　Defendants,<br>and<br><br>ITT EDUCATIONAL SERVICES, INC.,<br><br>　　　　　　　　Nominal Defendant. | Civil Action No. 1:13-cv-3110-JPO<br><br>(Consolidated with Civil Action No. 1:15-cv-03390-JPO). |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JANICE NOTTENKAMPER'S MOTION FOR RECONSIDERATION**

Plaintiff Janice Nottenkamper ("Nottenkamper") respectfully submits this memorandum of law in further support of her Motion for Reconsideration (the "Motion") (Dkt. 45).

## I. PRELIMINARY STATEMENT

In his opposition to the Motion (the "Opposition"), plaintiff Sasha Wilfred ("Wilfred") and Wilfred's counsel espouse a deliberately myopic view of this shareholder derivative action (the "Action") filed on behalf of ITT Educational Services, Inc. ("ITT" or the "Company"). Ignoring that each substantive claim for relief on ITT's behalf asserted in his Verified Second Amended Shareholder Derivative Complaint (the "*Wilfred* Complaint") must be proven in order to succeed at trial, the Opposition disavows the bulk of the factual allegations Wilfred asserts in the *Wilfred* Complaint in support of the Company's claims for relief. Why would Wilfred and Wilfred's counsel denigrate most of their own pleading? The answer is simple: "partial standing," much like being a little bit pregnant, under the now-clearly defined contours of the law regarding shareholder derivative standing in this Circuit, as well as Delaware law, does not exist. Indeed, Wilfred is not even a "proper party" to this Action, let alone the best-suited plaintiff to lead it on the Company's behalf.

In an attempt to salvage Wilfred's appointment as Lead Plaintiff, Wilfred's Opposition seeks to cast doubt on *In re Facebook, Inc. Initial Public Offering Derivative Litigation*, 2015 WL 4490644 (2d Cir. July 24, 2015) as the basis for the Motion, by claiming that "*Facebook* does not change the law." Opposition at 6. Wilfred and his counsel are wrong. *Facebook* did not merely clarify the law in this Circuit with respect to the contemporaneous ownership rule and the requisite standing necessary for a shareholder derivative plaintiff to assert claims for relief on behalf of a corporation. *Facebook* went further. Indeed, *Facebook* represents the first time the U.S. Court of Appeals for the Second Circuit has held that a putative derivative plaintiff who

1

attempts to prosecute claims based on alleged misconduct that pre-dates the plaintiff's share ownership is "***no proper party***, whatever the merits of the underlying claims." *Facebook*, 2015 WL 4490644 at *6.  This critical aspect of the *Facebook* decision, which Wilfred and his counsel studiously avoid, is not academic.  *Facebook* makes clear that ***Wilfred is not a proper party to this Action***, because, *inter alia,* no matter how strong the Company's derivative claims may be, Wilfred's impaired and defective standing subjects Wilfred to unique defenses that Defendants could assert at any time throughout the litigation of the Action, up to and including trial, endangering any potential relief the Company might realize as a result of this Action.

Missing the trees for the forest, and running away from the majority of the allegations of Defendants' wrongdoing in 2008-2010 as set forth in the *Wilfred* Complaint, Wilfred and Wilfred's counsel also self-servingly attempt to persuade this Court that the purported "core" of the alleged wrongdoing giving rise to this Action occurred only after Wilfred acquired stock in ITT, emphasizing the Company's receipt of claims for defaulted student loans beginning in March 2011.  Opposition at 5-6.[1]  Yet, Wilfred's short-sighted gambit to secure control of the Action at the pleading stage -- at the expense of disavowing the bulk of the *Wilfred* Complaint itself -- has jeopardized the Company's ability to succeed at trial.  As discussed herein, for every

---

[1] The concept that a derivative plaintiff need only acquire his or her stock "before the core of the allegedly wrongful conduct transpired" to have standing is directly attributed by Wilfred and Wilfred's counsel to the Second Circuit's decision in *In re Bank of New York Derivative Litigation*, 320 F.3d 291, 298 (2d Cir. 2003).  Opposition at 5.  It is worth noting, however, as Wilfred's cited portion of *Bank of New York* explicitly demonstrates, that *Bank of New York* was brought on behalf of a New York corporation, and New York Business Corporation Law Section 626(b) applied in that case.  *Id.*  ITT is a Delaware corporation, the New York Business Corporation Law accordingly does not apply to this Action, and Delaware's contemporaneous ownership rule as codified by Section 327 of the Delaware General Corporation Law is "strictly interpret[ed]" and "firmly enforce[d]."  *Conrad v. Blank*, 940 A.2d 28, 41 (Del. Ch. 2007).

single substantive claim for relief asserted in the *Wilfred* Complaint on ITT's behalf, the underlying breach of fiduciary duty occurred ***before*** Wilfred became an ITT shareholder.[2]

Further, Wilfred's assertion that he was an ITT shareholder throughout the "core" of the alleged wrongdoing is wholly conclusory.[3] Indeed, it is a bald-faced claim made by Wilfred and Wilfred's counsel without the benefit of even a single document produced in discovery or the deposition testimony of even one witness. How could Wilfred and Wilfred's counsel possibly profess to know at this stage of the Action, with total certainty, precisely when the "core" of Defendants' wrongdoing giving rise to ITT's claims began and ended, without any evidentiary record whatsoever? Wilfred and Wilfred's counsel do not even attempt to answer this question, nor could they.

Even assuming, *arguendo*, that the so-called "core" of Defendants' wrongdoing occurred when Wilfred claims it did for mere pleading purposes (a specious proposition at best, given Wilfred's many allegations of wrongdoing in 2008, 2009, and 2010 that pre-date Wilfred's ITT stock ownership), if during the course of discovery in this Action, evidence were to come to light suggesting or demonstrating that the "core" of Defendants' wrongdoing began prior to Wilfred's share ownership, Wilfred could not prosecute claims on ITT's behalf based upon such events. At this preliminary stage of the Action, the "relevant period," much like the "class period" in a

---

[2] As further discussed below, perhaps most significantly, the basis for all of the damages suffered by ITT in this Action stem from ITT securing a series of four risk-sharing agreements ("RSAs") with third-party lenders; the material risks of these RSAs were not disclosed to the investing public; and ITT did not establish adequate reserves to cover the expected losses from these RSAs.

[3] *Facebook* requires a plaintiff to set forth facts supporting their standing to plead derivative claims, rather than simply asserting conclusory allegations concerning their standing. *Facebook*, 2015 WL 4490644 at *13.

3

federal securities fraud class action, is hardly static.[4]  Yet, the appointment of an improper party to lead the Action creates an incentive for that stockholder and "lead counsel" to ignore valuable claims that the plaintiff lacks standing to prosecute.[5]

Wilfred's appointment as Lead Plaintiff creates risk and uncertainty in the Action, and jeopardizes the very claims Wilfred attempts to assert on ITT's behalf in the *Wilfred* Complaint.  It is inappropriate for the Court to allow such a hazard to exist by permitting a plaintiff with impaired standing to jeopardize ITT's chances at obtaining complete relief.  Meanwhile, as a continuous ITT shareholder for over 20 years, Nottenkamper suffers from no such deficiencies; is clearly the only plaintiff that is a "proper party" to the Action in accordance with the Second Circuit's recent *Facebook* decision; and is willing and able to ***fully*** prosecute the Action on ITT's behalf.

## II.   ARGUMENT

### A.  The Motion is Appropriate and Timely

The Second Circuit's recent decision in *Facebook* explained and clarified this Circuit's law regarding derivative standing and the contemporaneous ownership rule, and then took

---

[4]   In any event, Wilfred's arguments in the Opposition directly contradict the allegations in the *Wilfred* Complaint which date back to 2007.

[5]   Wilfred and Wilfred's counsel make much of the notion that Wilfred "did not engage in the conduct that the contemporaneous ownership rule is designed to prevent, *i.e.*, 'the purchasing of shares in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of the stock'".  Opposition at 9.  That argument conveniently ignores that Delaware's contemporaneous ownership rule was designed and intended to do more than merely prevent investors from "buying a lawsuit."  As the Delaware Chancery Court explained in *Conrad,* 940 A.2d at 41 (a case cited in the Motion but which Wilfred and Wilfred's counsel conspicuously ignore), "Delaware courts strictly interpret the contemporaneous ownership rule and firmly enforce its requirements, in order to give effect to section 327's ***twin objectives*** of preventing strike suits and ***ensuring that a derivative plaintiff act in the corporation's best interest in prosecuting a claim***."

another critical step – holding, for the first time, that a putative derivative plaintiff who attempts to prosecute claims based on alleged misconduct that pre-dates the plaintiff's share ownership is not a "***proper party***" to a derivative action. *Facebook*, 2015 WL 4490644 at *6. Wilfred and Wilfred's counsel now claim that "*Facebook*… re-applied the Second Circuit's decision in *In re Bank of New York*…" Opposition at 5. Even putting aside the fact that *Bank of New York* applied New York substantive law rather than the Delaware substantive law that exclusively applies to this Action -- pursuant to which the contemporaneous ownership rule is strictly interpreted and enforced (*see Conrad*, 940 A.2d at 41) – Wilfred and Wilfred's counsel are wrong. *Bank of New York* offers no comment as to whether a derivative plaintiff who attempts to raise claims based on allegations of wrongdoing that pre-date the stockholder's share ownership can nonetheless be a "proper party" to a derivative suit.

Wilfred and Wilfred's counsel conveniently ignore the most significant part of the *Facebook* decision – that a putative derivative plaintiff "who has not satisfied" the contemporaneous ownership rule, because they assert claims based on alleged misconduct that pre-dates the shareholder's acquisition of shares in the subject corporation, "is no proper party, whatever the merits of the underlying claims." *Facebook*, 2015 WL 4490644 at *6. Wilfred and Wilfred's counsel's failure to address this major aspect of *Facebook* sticks out in their Opposition like a sore thumb, and is their tacit admission that Wilfred is not a proper party to this Action.

Moreover, as addressed in the Motion (and similarly ignored by Wilfred in the Opposition), the Motion presents the first opportunity for the Court to evaluate the respective standing of the lead plaintiff candidates where each plaintiff has placed a verified pleading regarding their share ownership before the Court. Nottenkamper clearly and specifically alleged

5

her standing to assert ITT's claims from the outset, identifying herself as a continuous shareholder of ITT since 1994. Wilfred and Wilfred's counsel, however, have been far less forthright with the Court. Wilfred's initial complaint alleged only that Wilfred held ITT stock "continuously throughout all relevant times," while simultaneously defining the "Relevant Period" as "between April 24, 2008 and February 25, 2013." (Dkt. #1 at ¶¶1, 27). In Wilfred's verification submitted with that initial complaint, Wilfred attested that Wilfred "continuously owned ITT Educational Services, Inc. common stock during the relevant period" – which, again, was defined as beginning in April 2008. (Dkt. #1). Next, in Wilfred's first amended complaint (the "FAC"), Wilfred once again misleadingly verified that Wilfred held ITT common stock "during the relevant period," but alleged in the FAC that the purpose of the FAC was to seek redress on behalf of ITT for Defendants' misconduct that "occurred between April 24, 2008 and the present." (Dkt. #14). Even when specifically pressed via Nottenkamper's Motion to Consolidate Related Actions, Appoint Lead Plaintiff and Appoint Lead and Liaison Counsel (the "Consolidation Motion"), Wilfred's opposition was lacking, stating only that Wilfred purchased ITT stock before March 2011. (Dkt. #32 at 7).

It was not until *after* the Court denied the Consolidation Motion that Wilfred would, for the first time, file a verified pleading specifically alleging his (still clearly deficient) "standing." (Dkt. #39). Assuming this belated representation to the Court to be truthful, Nottenkamper respectfully submits that this Court could not have fully and properly evaluated the Consolidation Motion, since Wilfred patently refused to unambiguously state when he first acquired ITT stock until after the Consolidation Motion was denied, and the issue was not before the Court when the Order was entered. Now that these facts have finally come to light, the Motion is appropriate and the Order should be reconsidered.

6

### B.  Wilfred Concedes That He Cannot Fully Prosecute the Action

Notably Wilfred fails to address the arguments advanced in the Motion, supported by the *Wilfred* Complaint itself, that Wilfred lacks the requisite standing to prosecute each of the causes of action alleged in the *Wilfred* Complaint.  Tellingly, the Opposition ***never*** cites to the *Wilfred* Complaint for support of its argument.

In order to adequately allege a claim for breach of fiduciary duty under Delaware law, a plaintiff must plead that: (i) a fiduciary duty exists; and (ii) a fiduciary breached that duty. *Heller v. Kiernan*, 2002 WL 385545, at *3 (Del. Ch. Feb. 27, 2002), *aff'd*, 806 A.2d 164 (Del. 2002).  As *Facebook* clarified, in order to have standing to prosecute a derivative claim, a "proper plaintiff must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired" – that is, for a breach of fiduciary duty claim, the breach. *Facebook,* 2015 WL 4490644 at *8 (citing *Bank of New York*, 320 F.3d at 299). Yet, for each of Wilfred's alleged causes of action, Wilfred did not own ITT stock at the time Wilfred alleges Defendants ***breached*** their respective fiduciary duties.

***Breach of Fiduciary Duty for Failure to Maintain Internal Controls.***  The *Wilfred* Complaint alleges that the Board (and specifically the members of the Audit Committee) failed to properly maintain internal controls, because despite ITT's new financial exposure as a result of the RSAs, including the PEAKS Program and CUSO, Defendants did not properly account for those risks by establishing adequate reserves to cover expected losses, causing ITT to overstate its financial results, and concealed the true extent of the risks that it faced under the RSAs. ¶14.  As alleged by Wilfred, Defendants' duty under GAAP was to properly account for ITT's financial exposure that occurred when the RSAs were entered into: in 2007, 2009, and January 2010.  ¶¶13, 20.  Defendants' failure to do so constituted a breach of their fiduciary duties, as Wilfred alleges.

7

Wilfred became an ITT shareholder, however, eleven months *after* the last alleged breach which would give rise to the Company's claim based on Defendants' failure to maintain adequate internal controls.

*Unjust Enrichment*.   Wilfred seeks restitution on behalf of the Company in the form of "all profits, benefits, and other compensation obtained by Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches."  ¶269.  As discussed in the Motion, and noticeably unaddressed by Wilfred in the Opposition, this restitution would necessarily include insider stock sales that predate Wilfred's stock ownership in ITT, as well as executive compensation paid to officers and directors at ITT for years in which Wilfred did not hold ITT stock.  Motion at 20.  Yet, it is those sales, which the Motion alleges includes transactions that occurred in 2009 and 2010 that constitute a breach, and therefore, a plaintiff, in order to be a "proper party," must have held stock in ITT at those times.  Wilfred did not.

*Breach of Fiduciary Duty for Disseminating False and Misleading Statements*.   The Opposition is also conspicuously silent as to the glaring challenge posed to Wilfred in seeking to prosecute and prove this claim, since *two-thirds* of the alleged false and misleading statements in the *Wilfred* Complaint giving rise to the claim were made prior to the time that Wilfred owned ITT stock.  Motion at 16-19.  To prove that a given statement was false and misleading, a plaintiff must allege particularized facts that the statement was false and misleading *when made*. *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004). Wilfred's constant and vocal reliance on ITT's receipt of claims on March 1, 2011 as the alleged "smoking gun," does not retroactively make statements issued before that date false and misleading.  In order to prosecute a claim for breach of fiduciary duty for the issuance of false and misleading statements which make up

nearly ten pages of the *Wilfred* Complaint, Wilfred would have to have continuously held ITT stock since 2008. Wilfred's impaired standing dooms this claim, and the Action as a whole.

### C. The So-Called "Core" of Defendants' Misconduct Has Yet to Be Determined

Wilfred's conclusory statement that Wilfred has held ITT stock throughout the "core" of the Defendants' wrongdoing cannot possibly survive scrutiny. Despite the allegations in the *Wilfred* Complaint regarding Defendants' wrongdoing commencing in April 2008, Wilfred and Wilfred's counsel now self-servingly argue in the Opposition that the purported "core" of the Defendants' wrongdoing did not begin until March 2011, when ITT received the first of several claims from Sallie Mae as a result of student loan defaults stemming from the RSAs. Opposition at 6. Yet the ***outcome*** of ITT's entry into the RSAs cannot be separated from the ***act*** of entering into the RSAs. *See Bank of New York*, 320 F.3d at 298 ("If a court determines that a single, ongoing transaction is involved, the plaintiff must have acquired stock in the company before all of the core conduct occurred in order to bring suit."). All the harms to ITT outlined in the *Wilfred* Complaint flow from ITT's entry into the RSAs, including Defendants' alleged failure to properly maintain a set of adequate internal controls (¶14), which, in turn, was the basis that made the majority of Defendant's statements allegedly false and misleading (¶¶136, 138, 140, 142, 146, 149, 152, 157, 161, 167, 173, 179, 185, 191), leading to an overinflated stock price which permitted top Company insiders to unjustly enrich themselves (¶¶235-238).

Even assuming, *arguendo*, that a preliminary determination could be made at the pleading stage as to precisely when the "core" of the Defendants' misconduct began and ended (a nebulous concept in any event), and that Wilfred held ITT stock during that entire period, the Action, of course, does not end at the pleading stage. Absent a fully-developed evidentiary record, Wilfred and Wilfred's counsel cannot possibly state with any degree of certainty exactly

9

when the purported "core" of the Defendants' wrongdoing began and ended for purposes of proving ITT's claims at trial. The "relevant period" in the Action is subject to change as the litigation continues, and the threshold issue of Wilfred's standing as raised by Nottenkamper has already forced Wilfred and Wilfred's counsel to turn their backs on the majority of the allegations of wrongdoing in the *Wilfred* Complaint. What will Wilfred and Wilfred's counsel do when Defendants inevitably raise this issue, in the context of a dispositive motion, based on the evidentiary record? Assuming that Wilfred could even conduct discovery regarding the claims that his impaired standing prevents him from prosecuting (*see*, *e.g.*, Fed. R. Civ. P. 26 ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's *claim* or defense,")), it is possible (if not likely) that discovery will yield evidence demonstrating that the "core" of Defendants' misconduct predated Wilfred's purchase of ITT stock. For Wilfred, and most importantly, for the Company, this evidence would be useless since Wilfred would not able to pursue the Company's claims given his impaired status.

Finally, the discovery of additional claims by Wilfred and Wilfred's counsel that predate Wilfred's ITT share ownership creates a perverse incentive to settle the Action on lackluster terms for the Company. With the knowledge that Wilfred could not successfully bring a claim to trial, Wilfred and Wilfred's counsel would be motivated to seek a resolution to the Action that could not provide full relief to the Company in exchange for releasing claims against Defendants they were never at risk of facing.

### III.  CONCLUSION

For all the foregoing reasons, and those already advanced before this Court, Nottenkamper respectfully requests that the Court grant the Motion.

10

Dated:  September 8, 2015          **LAW OFFICES OF CURTIS V. TRINKO, LLP**

                                         By:   s/ Curtis V. Trinko
                                               Curtis V. Trinko
Jennifer E. Traystman
C. William Margrabe
16 West 46th Street, 7th Floor
New York, New York 10036
Telephone:  (212) 490-9550
Facsimile:  (212) 986-0158
ctrinko@trinko.com
jtraystman@trinko.com
wmargrabe@trinko.com

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
Brett D. Stecker
James M. Ficaro
22 Cassatt Avenue
Berwyn, PA 19312
Telephone:  (610) 225-2677
Facsimile:  (610) 408-8062
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jmf@weiserlawfirm.com

**RYAN & MANISKAS, LLP**
Katherine M. Ryan
Richard A. Maniskas
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: (484) 588-5516
Facsimile:  (484) 450-2582
rmaniskas@rmclasslaw.com
kryan@rmclasslaw.com

*Counsel for Plaintiff Janice Nottenkamper*